UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUNG HOAN TRAN,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | Case No. 5:26-cv-03168-SSC<br><br>MEMORANDUM AND ORDER |

Petitioner, a Vietnamese citizen subject to a final order of removal from the United States, brings this counseled habeas petition seeking release from immigration custody. The petition pleads two claims, each directed at the revocation of Petitioner's order of supervision: that Respondents revoked it without evidence of changed circumstances establishing that his removal is reasonably foreseeable, in violation of 8 C.F.R. § 241.13(i)(2) and due process; and that the revocation violated 8 C.F.R. § 241.4(l) and due process. Because Respondents made the determination § 241.13(i)(2) requires, and because Petitioner's release was not revoked under § 241.4(l), the Court denies the petition—without prejudice to filing another should Petitioner's removal not be accomplished within a reasonable time.

**I**

On June 9, 2026, Petitioner Hung Hoan Tran filed a petition for writ of habeas corpus by a person in federal custody pursuant to 28 U.S.C. § 2241. (ECF 1.) Petitioner is a noncitizen in immigration detention at the Adelanto Immigration and Customs Enforcement (ICE) Processing Center in Adelanto, California. (*Id.* at 2.) Petitioner is a citizen of Vietnam. (*Id.* at 3.)

The petition alleges the following facts. Petitioner was born in Vietnam in 1974 and entered the United States in 1982 as a lawful permanent resident. (*Id.* at 4.) In 2000, Petitioner was convicted of embezzlement in violation of 18 U.S.C. § 656 and served approximately 30 days in custody. (*Id.*) On November 21, 2000, Petitioner was placed in removal proceedings and charged as removable for an aggravated felony offense, and he was released on bond in approximately January 2001. (*Id.*) An immigration judge ordered Petitioner removed on December 11, 2001, and the Board of Immigration Appeals affirmed that order on January 31, 2003. (*Id.*; ECF 1-1 at 12–15.) In approximately 2006, Petitioner was taken back into immigration custody for removal to Vietnam. (ECF 1 at 4.) He could not be removed, was held for approximately 90 days, and was released on an order of supervision (OSUP). (*Id.*) Petitioner reported to immigration authorities under that OSUP for more than twenty years. (*Id.* at 4.) On June 3, 2026, Petitioner was detained when he appeared for a regularly scheduled check-in. (*Id.* at 2, 4.)

As stated above, the petition brings two claims: (1) violation of 8 C.F.R. § 241.13(i)(2) and due process by revoking Petitioner's release and detaining him without evidence of changed circumstances establishing that his removal is reasonably foreseeable; and (2)

violation of 8 C.F.R. § 241.4(l) and due process because, Petitioner contends, none of the circumstances permitting revocation were present and the revocation was not effected by an official authorized by that regulation. (*Id.* at 5–7; ECF 10 at 4–5.)

The petition seeks Petitioner's release and return to the terms of his prior order of supervision. (ECF 1 at 7.) The petition also seeks the return of government-issued identification taken at his arrest, an order that Petitioner not be re-detained "without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community[,]" and costs and fees. (*Id.*)

Respondents filed an answer to the petition. (ECF 9.) Respondents assert that Petitioner was detained on June 3, 2026, for the purpose of effectuating his removal to Vietnam; that Petitioner was served that day with a Notice to Alien of Revocation of Release and concurrently provided an informal interview; and that on June 10, 2026, the Department of Homeland Security transmitted a travel document request for Petitioner to the Consular Section of the Embassy of Vietnam. (*Id.* at 2; ECF 9-1; ECF 9-2; ECF 9-3.) Respondents further contend that 8 U.S.C. § 1252(g) forecloses jurisdiction. (ECF 9 at 8.)

Petitioner filed a traverse. (ECF 10.) The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15.

**II**

Relief in the form of a writ of habeas corpus may be granted to a person in custody under the authority of the United States if the

petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). The petitioner bears the burden of showing that his custody is unlawful.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment applies to noncitizens "whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

**III**

Respondents first contend that 8 U.S.C. § 1252(g) deprives the Court of jurisdiction. (ECF 9 at 8.) It does not. Section 1252(g) reaches only "three discrete actions that the Attorney General may take"—the "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Petitioner does not challenge the decision to commence proceedings against him, the adjudication of those proceedings, or the execution of his removal order. He challenges the lawfulness of his present detention and the revocation of his release. Those claims are not among the three discrete actions the provision reaches, and courts retain jurisdiction to decide the legal questions they present. *See Ibarra-Perez v. United States*, 154 F.4th 989, 996–97 (9th Cir. 2025). Respondents' reliance on *Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir.

2022), is misplaced; the petitioner there sought to block the execution of a removal order itself.

**IV**

Some context is useful. Vietnam long maintained a policy of not accepting the return of Vietnamese nationals who arrived in the United States before July 12, 1995. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 147 (D. Mass. 2025). In November 2020, the United States and Vietnam signed a Memorandum of Understanding under which "Vietnam began to accept some pre-1995 arrivals, but on a discretionary, case-by-case basis." *Minh Xuan Nguyen v. Noem*, 817 F. Supp. 3d 889, 896 (C.D. Cal. 2025). Some portions of that memorandum are redacted. *Hyde*, 788 F. Supp. 3d at 148. Petitioner entered the United States in 1982 and is therefore a pre-1995 arrival. As discussed further below, the policy related to pre-1995 arrivals recently changed.

**V**

Count One alleges that Respondents violated 8 C.F.R. § 241.13(i)(2) and Petitioner's right to due process "by detaining Petitioner without evidence of changed circumstances that his removal is reasonably foreseeable." (ECF 1 ¶ 38.) The premise of the claim is that the regulation "places the burden on the government to demonstrate that there are new circumstances which now establish that removal is reasonably foreseeable." (*Id.* ¶ 37; *see* ECF 10 at 2–3.) Petitioner grounds the due process component of the claim in the principle that an agency must follow its own regulations, and that the failure to follow regulations meant to protect fundamental rights may violate due process. (ECF 1 ¶ 34 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954), and *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998)).)

Section 241 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1231, requires the removal of a noncitizen within ninety days of a final order, § 1231(a)(1)(A), and permits the detention of certain noncitizens beyond that removal period, § 1231(a)(6). In *Zadvydas*, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." 533 U.S. at 699. Interpreting § 1231 in this manner avoided a due process issue that would be caused by indefinite detention. *Id.* at 689–90. Still, "for the sake of uniform administration in the federal courts," the high court recognized a six-month period of presumptive reasonableness to effect a final removal order. *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations implement § 1231(a). *See Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). Section 241.13(i) governs the revocation of a release granted under that section. Release may be revoked if the noncitizen violates its conditions, § 241.13(i)(1), or "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future[,]" § 241.13(i)(2). The provision "requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Hyde*, 788 F. Supp. 3d at 150 (quoting *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023)). Respondents do not contend that Petitioner violated any condition of his

release. The question is therefore whether the requirements of § 241.13(i)(2) were met and who bears the burden of proving such.

Petitioner contends that Respondents bear the burden of establishing those requirements, relying on *Hoong v. Johnson*, No. 5:26-cv-01829-AYP, 2026 WL 1601880, at *5–6 (C.D. Cal. May 29, 2026), and the decisions it collects. (ECF 10 at 2–3.) The reasoning of those decisions is that § 241.13(i)(2) "only applies where the noncitizen has already been released based on DHS's determination that their removal is not reasonably foreseeable under the *Zadvydas* burden-shifting framework," so that a noncitizen whose release is revoked has "already met [his] burden" once, and the Government, seeking to undo its own determination, must show what changed. *Hoong*, 2026 WL 1601880, at *6. Petitioner asserts that he "already established that his removal was not reasonably foreseeable when he was released from custody." (ECF 10 at 3.) Nothing in this record identifies a determination under 8 C.F.R. § 241.13(d)–(g) as to Petitioner, and his 2006 release appears instead to reflect ICE's then-general practice of releasing pre-1995 Vietnamese nationals after approximately ninety days. *See Hoong*, 2026 WL 1601880, at *4; *cf. Minh Xuan Nguyen*, 817 F. Supp. 3d at 895–96 (inferring such a determination from the repatriation climate at the time of release). Respondents have not disputed the allocation Petitioner urges, and the Court assumes without deciding that Respondents bear the burden, because the outcome is the same.

The changed circumstances appear in the record and are not seriously in dispute. As discussed above, Vietnam long declined to accept the return of nationals who arrived in the United States before July 12, 1995. Under the 2020 Memorandum of Understanding, "Vietnam began to accept some pre-1995 arrivals, but on a

discretionary, case-by-case basis[,]" *Minh Xuan Nguyen*, 817 F. Supp. 3d at 896, and it "now considers each request from ICE on a case-by-case basis[,]" issuing travel documents "in a non-negligible portion of cases[,]" *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1090 (C.D. Cal. 2020). On June 9, 2025, ICE's policy of generally treating pre-1995 Vietnamese nationals as unlikely to be removed was rescinded. *See Phong Thanh Nguyen v. Scott*, 796 F. Supp. 3d 703, 715 (W.D. Wash. 2025). Each of those developments predates June 3, 2026.

Petitioner objects that these generalized developments say nothing about him. (ECF 10 at 3–4.) But § 241.13(i)(2) requires that the *determination* be individualized; it does not require that the *change* be. Where the impediment to removal was itself categorical—a policy applied to a class defined by date of arrival—a person-specific change is not merely absent but conceptually unavailable. And Petitioner's own theory of unremovability rests on the categorical character of the policy he says persists. He cannot demand that the change be individualized while resting his claim on the generality of the bar.

Further, the determination as to Petitioner was individualized, and it was communicated to him. ICE identified Petitioner as a person for whom it would seek a travel document under the changed regime and told him so in writing on the day of his detention, identifying Vietnam as the country of removal and stating that "ICE is seeking a travel document to effect your expeditious removal to Vietnam." (ECF 9-1 at 1–2.) It afforded him the informal interview § 241.13(i)(3) prescribes as the occasion to respond, at which he made no oral response, submitted no written statement, and provided no documents. (ECF 9-2.) It then assembled and transmitted the request: a supervisory officer executed the Vietnam TDR Checklist on June 10,

2026, and the formal request went to the Consular Section of the Embassy of Vietnam that day. (ECF 9-3 at 1–3.)

Petitioner argues that the June 3 revocation cannot rest on a travel document request that did not issue until June 10 and characterizes the interval as a "fishing expedition." (ECF 10 at 2.) The premise is mistaken. The notice stated that ICE "is seeking" a travel document, which was accurate as the request was then being assembled. The Vietnam TDR Checklist requires, among other things, a Form I-217 containing a last known address in Vietnam, a self-declaration completed by the noncitizen, available Vietnamese identity documents, a family information statement, and a passport-style photograph, and it requires a supervisory officer to certify the package complete before submission. (ECF 9-3 at 1.) Several of those items can be obtained only from or with the participation of the noncitizen. A rule requiring the request to precede the revocation would invert the sequence the process follows and would condition revocation on completing a package that ordinarily cannot be completed before the noncitizen is available. Nothing in § 241.13(i)(2) imposes such a requirement, and due process does not supply one. *See Demore v. Kim*, 538 U.S. 510, 528 (2003) ("[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."); *cf. Minh Xuan Nguyen*, 817 F. Supp. 3d at 897 (noting a one-month interval between detention and request).

Petitioner's remaining contention is that, changed circumstances notwithstanding, his removal is not significantly likely in the reasonably foreseeable future. (ECF 10 at 3–34.) He relies on *Hoong*'s statement that "[i]n the post-Memorandum era, Vietnam has

overwhelmingly declined to issue travel documents for pre-1995 immigrants." 2026 WL 1601880, at *4. That statement rests on figures with a definite endpoint. The quarterly reports ICE agreed to file under the *Trinh* settlement showed that between September 2021 and September 2023, the government requested travel documents for sixteen pre-1995 Vietnamese nationals and obtained them for four. *Minh Xuan Nguyen*, 817 F. Supp. 3d at 896. Those figures end in September 2023. They precede the June 2025 rescission described above, and they precede each of the removals of pre-1995 Vietnamese nationals that Respondents identify as having occurred in 2025 and 2026. (ECF 9 at 4–5.)

More fundamentally, Petitioner has offered no evidence of his own. The exhibits accompanying the petition are a detainee locator printout, Petitioner's declaration, the removal orders, a 2001 motion for change of venue, the Notice to Appear, a marriage license, medical records of Petitioner's wife, and his parents' passports. (ECF 1-1.) None concerns Vietnam's repatriation practices, and Petitioner's declaration addresses only his immigration and detention history. What he offers instead is a finding entered by another court on another record, which is authority for the proposition it decides but is not evidence here. Respondents' showing—*Trinh*'s characterization and an assertion, unsupported by declaration, that similarly situated petitioners have been removed—is likewise thin, and the Court does not find affirmatively that Petitioner's removal is likely. It holds only that, on this record, the changed circumstances Respondents identified suffice to support the determination § 241.13(i)(2) requires.

Two further points bear mention because Petitioner presses them. First, he emphasizes that immigration authorities held him for

approximately ninety days in 2006 and could not remove him. (ECF 1 ¶¶ 22–24.) Nothing in this record suggests that Vietnam considered Petitioner's case in 2006 and declined to issue a travel document for him; the record reflects only that he was detained, could not be removed, and was released, at a time when Vietnam accepted no one in his position. The 2006 episode is thus an instance of the categorical policy rather than evidence independent of it. The contrast with *Hoong* is instructive. The record there showed that ICE had requested a travel document for that petitioner and that Vietnam had not issued one before his release, *Hoong*, 2026 WL 1601880, at *7, so that a renewed request put a question already answered as to him. Here the June 10, 2026 request is the first ever submitted on Petitioner's behalf.

Second, Petitioner emphasizes that he reported under his OSUP for more than 20 years. (ECF 1 ¶ 25.) The Court does not doubt it, and it is to his credit. But elapsed time is probative of unforeseeability only where the condition that prevented removal persists; prior failures predict future failure because, and to the extent that, their cause endures. The cause here was a categorical bar, and whether that bar survives in its former form is the question the record does not answer.

Petitioner has not shown that Respondents violated 8 C.F.R. § 241.13(i)(2), and the due process claim premised on that violation fails with it. *See Accardi*, 347 U.S. at 267. Count One is denied.

**VI**

Count Two alleges that Respondents violated 8 C.F.R. § 241.4(l), which authorizes revocation of release only upon a violation of its conditions or a determination enumerated in § 241.4(l)(2)(i)–(iv). (ECF 1 ¶¶ 41, 43.) Again, the premise of that claim is mistaken. The Notice to Alien of Revocation of Release offers the revoking officer two

alternative authorities. (ECF 9-1 at 1–2.) Every box under the heading "Your release has been revoked pursuant to 8 C.F.R. § 241.4(l)" is unmarked. (*Id.* at 1.) The box under the alternative heading, "Your release has been revoked pursuant to 8 C.F.R. § 241.13(i)," is marked, as is the reason beneath it: "Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." (*Id.*) Respondents did not revoke Petitioner's release under § 241.4(l), and that regulation therefore supplies no basis for relief. *See Hoang v. Santa Cruz*, No. EDCV 25-cv-02766 JGB (JCx), 2025 WL 3141857, at *3 (C.D. Cal. Oct. 28, 2025) ("[I]f a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l)[.]"), *quoted in Hoong*, 2026 WL 1601880, at *3.

Petitioner further argues that the revocation was invalid because the Notice of Revocation was signed by a Detention and Deportation Officer rather than by the Executive Associate Commissioner or a district director, as § 241.4(l)(2) contemplates. (ECF 10 at 5.) That argument rests on the same mistaken premise. Section 241.4(l)(2) prescribes who may revoke release under § 241.4(l). Section 241.13(i), under which this revocation was made, provides only that "[t]he Service may revoke an alien's release under this section," and designates no particular official. § 241.13(i)(2). The form itself reflects that a "241.13 [revocation] may be by [the Removal Management Division (RMD)]." (ECF 9-1 at 2.) The notice here was signed by a RMD Detention and Deportation Officer. (*Id.*)

In any event, and although Petitioner asks the Court to order his immediate release on account of the asserted violation (ECF 10 at 5), the remedy for a defect of this kind would not be release. Where a court

identifies a procedural deficiency in the revocation of supervised release, the appropriate response is to cure the deficiency, not to override the detention authority Congress conferred in § 1231. *See Ahmad v. Whitaker*, No. C18-287-JLR-BAT, 2018 WL 6928540, at *6 (W.D. Wash. Dec. 4, 2018), *report and recommendation adopted*, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019); *Doe v. Smith*, No. 18-11363-FDS, 2018 WL 4696748, at *9 (D. Mass. Oct. 1, 2018) (finding "no apparent reason why a violation of the regulation . . . should result in release"); *Pogosyan v. Bondi*, No. 5:25-cv-03121-SRM-AS, 2025 WL 3898485, at *8 (C.D. Cal. Dec. 3, 2025) (ordering respondents to provide the § 241.13(i)(3) interview within one week rather than ordering release). Injunctive relief "must be tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). Petitioner received written notice identifying the reason for revocation and an informal interview the same day, and he has not identified any injury traceable to the identity of the signing officer. Count Two is denied.

A final observation. The conclusions above rest on this record and this moment. *Zadvydas* contemplates that detention lawful today because removal remains reasonably foreseeable may become unlawful if it ceases to be, 533 U.S. at 699–701, and the lawfulness of the June 3, 2026 revocation does not answer whether continued detention remains authorized as time passes. The denial of the petition is accordingly without prejudice to a new petition should Petitioner's detention become indefinite.

**ORDER**

For the reasons set forth above, IT IS ORDERED that: (1) the petition (ECF 1) is DENIED without prejudice; and (2) Judgment shall be entered accordingly.

DATED: September 11, 2026

HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE